**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-02759-CMA

STATE OF COLORADO AND UNITED STATES OF AMERICA, *ex rel.,*
RHONDA LOVATO,

      Plaintiffs,

v.

KINDRED HEALTHCARE, INC., a Kentucky corporation, *d/b/a* Kindred Hospital Aurora,
*d/b/a* Kindred Hospital Denver, a Kentucky corporation,
DR. ERIC YAEGER,
WESTERN AMBULANCE CO, LLC, a Colorado corporation,
NORTHGLENN OPERATIONS, LLC, a Colorado corporation, d*/b/a* Avamere
Transitional Care, *d/b/a* Rehab-Malley,

      Defendants.

---

**ORDER ADOPTING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the December 14, 2020 Recommendation of

United States Magistrate Judge on four pending motions to dismiss independently filed

by each Defendant in this case. (Doc. # 134.) Therein, Magistrate Judge Nina Y. Wang

recommends that this Court grant both Malley's Motion to Dismiss (Doc. # 96) and

Western's Motion to Dismiss (Doc. # 125) and grant in part and deny in part both

Kindred's Motion to Dismiss (Doc. # 96) and Dr. Yaeger's Motion to Dismiss (Doc. #

98). Plaintiff/Relator Rhonda Lovato timely objected to some portions of the

Recommendation. For the following reasons, the Court adopts the Recommendation.

## I.     <u>BACKGROUND</u>

Judge Wang's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Plaintiff/Relator's Objection to the Recommendation.

Plaintiff/Relator Rhonda Lovato worked as the Market Chief Nurse Executive in Defendant Kindred Healthcare Inc.'s ("Kindred") long-term acute care hospitals ("LTACH") in Denver and Aurora, Colorado. (Doc. # 74 at ¶ 14.) Kindred is a healthcare provider whose LTACHs serve Medicaid and Medicare participants and "specialize in the treatment of patients with serious medical conditions that require intense, special treatment for an extended period of time (usually 20 to 30 days)." (*Id.* at ¶¶ 17, 21–22.) Defendant Eric Yaeger ("Dr. Yaeger") is a licensed pulmonologist who specializes in critical care medicine and internal medicine and contracts with Kindred to serve as its Medical Director and attending physician at its LTACHs in Denver and Aurora. *See* (*id.* at ¶¶ 29–30). Dr. Yaeger is also the Medical Director of Defendant Western Ambulance Co., LLC ("Western") and Defendant Northglenn Operations, LLC, d/b/a Avamere Transition Care and Rehabilitation—Malley ("Malley"), a skilled nursing facility. (*Id.* at ¶¶ 31–36.)

As Market Chief Nurse Executive, Ms. Lovato was responsible for a variety of different tasks, from managing Kindred's daily operations, to monitoring Kindred's patient care expenditures, to working with Dr. Yaeger to ensure adherence to medical staff guidelines. *See* (*id.* at ¶ 70). Ms. Lovato alleges that during her employment she

witnessed and became aware of Kindred's and Dr. Yaeger's false and fraudulent bills submitted to the federal and State of Colorado governments (collectively, the "Government"). *See* (*id.* at ¶¶ 71–73, 78, 92). Specifically, Ms. Lovato alleges that Kindred and Dr. Yaeger manipulated patients' diagnosis related group ("DRG")—an evaluation of the patient's primary and secondary diagnoses that determines the payment weight assigned to the patient—to procure higher reimbursements by adding diagnoses or complications to the DRGs; discharged patients on the date when Medicare/Medicaid would no longer cover the patients' care even when discharge was clinically inappropriate; fostered improper relationships between Kindred and Dr. Yaeger and Western Ambulance and Malley; billed for services, such as physician "rounding" and intensive care, that either did not occur or were up-coded; created false medical charts; improperly admitted patients; and improperly referred patients to the Aurora LTACH to receive higher reimbursements. *See* (*id.* at ¶¶ 59–62, 93–100, 112– 64). Kindred allegedly fostered these improper practices by offering bonuses to "leadership" staff who increased patients' DRG and by retaliating against employees who objected to these practices. *See* (*id.* at ¶¶ 75, 102–08, 190).

Concerned with these perceived fraudulent practices, Ms. Lovato raised complaints internally, before officially reporting Kindred and Dr. Yaeger to the Colorado Department of Public Health and Environment ("CDPHE") and the federal government. *See* (*id.* at ¶¶ 15, 76–79, 83–84, 166–72, 177–82). Both the CDPHE and federal authorities investigated Kindred based on Ms. Lovato's complaints and cited Kindred for various deficiencies. *See* (*id.* at ¶¶ 81–88). According to Ms. Lovato, within one or two

days after levying her formal complaint with the CDPHE, Kindred terminated her employment. *See* (*id.* at ¶¶ 80, 183–89).

Believing Kindred's, Dr. Yaeger's, Western's, and Malley's (collectively, "Defendants") conduct violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3279 *et seq.*, and the Colorado Medicaid False Claims Act ("CMFCA"), Colo. Rev. Stat. §§ 25.5-4-303.5 *et seq.*, Ms. Lovato initiated this *qui tam* action on behalf of the United States of America, the State of Colorado, and herself as Relator on December 18, 2015. (Doc. # 1.) The United States of America and the State of Colorado declined to intervene in this action on September 18, 2019. *See* (Doc. ## 31, 33, 35, 36).

Ms. Lovato's First Amended Complaint ("FAC") became the operative pleading on February 20, 2020. (Doc. # 74.) Pursuant to the FAC, Ms. Lovato asserts nine claims for relief: (1) violations of § 3729(a)(1)(A) of the FCA for false claims against Defendants ("Claim 1"); (2) violations of § 3729(a)(1)(B) of the FCA for false records against Defendants ("Claim 2"); (3) violations of § 3729(a)(1)(G) of the FCA for reverse false claims against Defendants ("Claim 3"); (4) violations of § 3730(h) of the FCA for retaliatory discharge against Kindred ("Claim 4"); (5) violations of § 25.5-4-305(1)(a) of the CMFCA for false claims against Defendants ("Claim 5"); (6) violations of § 25.5-4-305(1)(b) of the CMFCA for false records against Defendants ("Claim 6"); (7) violations of § 25.5-4-305(1)(f) of the CMFCA for reverse false claims against Defendants ("Claim 7"); (8) violations of § 25.5-4-306(7) of the CMFCA for retaliatory discharge against Kindred ("Claim 8"); and (9) violation of Colorado state law for wrongful discharge in violation of public policy against Kindred ("Claim 9"). *See generally* (Doc. # 74).

The Court referred the instant Motions to Dismiss to Judge Wang, who issued her Recommendation on December 14, 2020. Ms. Lovato timely objected to the Recommendation. (Doc. # 137.) Kindred and Dr. Yaeger filed responses. (Doc. ## 139, 140.)

## II.    LEGAL STANDARDS

### A.    REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).

**B.      FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## C.     FEDERAL RULE OF CIVIL PROCEDURE 9(b)

Ms. Lovato must plead her claims under the FCA and CMFCA with particularity under Fed. R. Civ. P. 9(b) because such claims sound in fraud. *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (citing *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019)).

"Rule 9(b)'s purpose is to afford a defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (brackets and internal quotation marks omitted). Vague and conclusory allegations of fraud are insufficient. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). The Tenth Circuit has consistently held that a plaintiff "must show the specifics of a fraudulent scheme and provide an adequate basis for a

7

reasonable inference that false claims were submitted as part of that scheme[,]" such as when the plaintiff pleads "factual allegations regarding the who, what, when, where[,] and how of the alleged claims." *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (internal quotation marks omitted). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

The Court's analysis will proceed in two steps. First, the Court will review the portions of the Recommendation to which no party objects in order to determine whether there are any clear errors in Judge Wang's findings and conclusions. Second, the Court will conduct a *de novo* review of the portion of the Recommendation to which Ms. Lovato objects.

## A.   CLEAR ERROR REVIEW

Neither party objected to the following determinations by Judge Wang:

1. that the Court should decline to convert the portions of Kindred's and Dr. Yaeger's Motions to Dismiss that concern the public disclosure bar affirmative defense into a motion for summary judgment (Doc. # 134 at 16);

2. that the Court should decline to consider the adequacy of Kindred's and Dr. Yaeger's public disclosure bar affirmative defense, and the exhibits offered in support of that affirmative defense, at this juncture and that the Court should deny Kindred's and Dr. Yaeger's Motions to Dismiss in this regard (*id.* at 16–

17) (citing *United States ex rel. Foreman v. AECOM*, 454 F. Supp. 3d 254, 263–64 (S.D.N.Y. 2020));

3. that Plaintiff's allegations are sufficient to state an FCA claim against Kindred and Dr. Yaeger for fraudulent billing for services not provided (*id.* at 25–30, 38–45);

4. therefore, that Kindred's and Dr. Yaeger's Motions to Dismiss should be denied to the extent they seek dismissal of Plaintiff's false claims and false records causes of action for fraudulent billing for services not provided (Doc. # 134 at 25–30);

5. that Plaintiff fails to state an FCA claim for violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, against all Defendants;

6. therefore, that Plaintiff's FCA claims against all Defendants should be dismissed to the extent they rely on the Anti-Kickback Statute;

7. that Plaintiff fails to state an FCA claim for purported violations of the Stark Law, 42 U.S.C. § 1395nn, against all Defendants;

8. therefore, that Plaintiff's claims against Western and Malley—i.e., Claims 1, 2, 5, and 6—should be dismissed because said claims are dependent on alleged violations of the Anti-Kickback Statute and Stark Law;

9. that Plaintiff's Claims 1, 2, 5, and 6 should remain against Kindred and Dr. Yaeger to the extent those claims are premised on alleged fraudulent billing for services not provided, not reasonable/necessary, or not billed at the commensurate level of care provided (*id.* at 45);

10. that Plaintiff fails to allege plausible reverse false claims causes of action against all Defendants (*id.* at 45–48);

11. therefore, that Defendants' Motions to Dismiss should be granted with respect to Plaintiff's reverse false claims, and Claims 3 and 7 should be dismissed;

12. that Plaintiff has plausibly pleaded a retaliatory discharge claim under the FCA (*id.* at 48–51);

13. therefore, that Kindred's Motion to Dismiss should be denied to the extent it seeks dismissal of Plaintiff's FCA retaliatory discharge claim;

14. that Dr. Yaeger fails to satisfy his heavy burden to prove that striking many of Plaintiff's allegations, which he argues are scandalous, inflammatory, irrelevant, and prejudicial to him and his reputation, is justified (*id.* at 52–53); and

15. therefore, that Dr. Yaeger's Motion to Dismiss should be denied in this regard.

The Court has reviewed the relevant pleadings concerning the above claims as well as the Recommendation. Based on this review, the Court concludes that Judge Wang's thorough and comprehensive analyses and recommendations are correct, and "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. Therefore, the Court adopts the applicable portions of the Recommendation, grants Malley and Western's Motions to Dismiss, and grants in part and denies in part Kindred and Dr. Yaeger's Motions to Dismiss in accordance with said

portions of the Recommendation. *See Summers*, 927 F.2d at 1167 (explaining that in the absence of a timely objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate.").

**B.    *DE NOVO* REVIEW**

Ms. Lovato objects to the Recommendation to the extent it concludes that (1) she has failed to state factually false FCA claims for manipulation of DRGs, improper discharge, and improper referrals to LTACHs with higher reimbursement rates; (2) she has failed to state legally false FCA claims for improper patient admissions; and (3) her state-law claim for wrongful discharge in violation of public policy should be dismissed as duplicative of her FCA retaliation claim. The Court overrules each of Ms. Lovato's objections in turn, finding no cause to overturn Judge Wang's well-reasoned, 55-page Recommendation.

    1.    <u>FCA Claims</u>

        *a.    Applicable Law*

As pertinent to the instant case, the FCA imposes liability on any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] . . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]

31 U.S.C. §§ 3729(a)(1)(A), (B), (G). For the purposes of the FCA, "knowingly" does not require "proof of specific intent to defraud"; rather, it requires at least a "reckless

disregard of the truth or falsity of the information." *United States v. The Boeing Co.*, 825 F.3d 1138, 1149 (10th Cir. 2016) (quoting 31 U.S.C. § 3729(b)(1)).

Similarly, the CMFCA imposes liability regarding the submission of Medicaid claims to the State of Colorado if any person:

> (a) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; [or] . . .
>
> (f) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act[.]"

Colo. Rev. Stat. §§ 25.5-4-305(1)(a), (b), (f).[1]

Ultimately, to plead cognizable false claims or false records causes of action, Ms. Lovato must allege: (1) "a false statement, [false record,] or fraudulent course of conduct"; (2) "made with the requisite scienter"; (3) "that is material"; and (4) "that results in a claim to the Government[.]" *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 539 (10th Cir. 2020) (emphasis omitted) (applying these four factors to false claims, false records, and reverse false claims under the FCA).

The FCA recognizes two types of actionable false claims—

factually false claims and legally false claims. In a run-of-the-mill "factually false" case, proving falsehood is relatively straightforward: A relator must

---

[1] Judge Wang focused in her Recommendation, and this Court will focus herein, on Ms. Lovato's FCA claim and associated case law. Given the substantial similarities between the FCA and the CMFCA, the Court's analysis applies equally to Ms. Lovato's CMFCA claims. *See United States ex rel. Rahimi v. Zydus Pharm. (USA), Inc.*, No. CV 15-6536-BRM-DEA, 2017 WL 1503986, at *12 (D.N.J. Apr. 26, 2017). The parties have not objected to this treatment of Ms. Lovato's claims.

generally show that the government payee has submitted "an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." By contrast, in a claim based on an alleged legal falsehood, the relator must demonstrate that the defendant has "certifie[d] compliance with a statute or regulation *as a condition* to government payment," yet knowingly failed to comply with such statute or regulation.

*U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (brackets and emphasis in original).

      b.     Analysis

        i.     <u>Manipulation of DRGs</u>

Ms. Lovato argues in her Objection that Judge Wang erred in holding that she had not adequately alleged that Dr. Yaeger and Kindred's manipulation of DRGs caused inflated Government reimbursements.

Under certain circumstances, a relator may plead a plausible FCA claim predicated on the manipulation of patients' DRGs, but only where there is a direct connection between the inflated DRG and a defendant's false statements. *See United States v. Kindred Healthcare, Inc. ("Kindred")*, 469 F. Supp. 3d 431, 444–47 (E.D. Pa. 2020); *but cf. United States ex rel. Stephens v. Tissue Science Labs., Inc.*, 664 F. Supp. 2d 1310, 1317–18 (N.D. Ga. 2009) ("Several courts have held that, when a claim is submitted based on a patient's DRG, the materiality requirement of the FCA cannot be met[,] . . . because the PPS system pays a standard rate based on the patient diagnosis and the DRG code, the itemized charges on a patient's bill are immaterial to the amount of reimbursement a provider receives." (brackets, internal quotation marks, and citations omitted)).

13

In this case, Ms. Lovato does not plead her DRG-manipulation claim with the requisite particularity. Although Ms. Lovato alleges in the FAC that Dr. Yaeger and Kindred are responsible for manipulating DRGs, she switches to using the passive voice, thereby failing to identify the individuals who allegedly undertook certain actions. *See, e.g.*, (Doc. # 74 at 21) ("Defendants would manipulate patients' DRGs at weekly Interdisciplinary Team ("IDT") meetings, where a coding sheet for each patient **was passed around** to all medical staff in attendance. Those attending the IDT meeting **would be asked** how they could maximize the DRG and/or DRG weight of individual patients by trying to find what potentially *may be* an additional complication or comorbidity." (emphasis added)). Other allegations pertinent to this claim are conclusory. *See* (*id.* at ¶ 93 (alleging that "Defendant Kindred's and Defendant Yaeger's goal of maximizing profit . . . was largely achieved by manipulating patients' DRGs")); *see also* (*id.* at ¶ 96 (alleging that "[b]y manipulating patients' diagnoses, thereby altering their DRGs, Defendant Kindred was able to increase its rate of reimbursement. In doing so, patients' length of stay ("LOS") would be increased, providing Defendants Kindred and Yaeger with more time to charge for additional services and/or procedures. Thus, by manipulating a patient's DRG, without regard to the actual condition of the patient, Defendant Kindred and Defendant Yaeger were both able to increase their profits.")). As Judge Wang found, Ms. Lovato has not identified particular coding sheets that were purportedly passed around and altered during weekly Interdisciplinary Team meetings. Nor has she alleged facts that would permit a factfinder to conclude that Kindred and/or Dr. Yaeger actually manipulated a Medicare or Medicaid patient's DRG.

Nor has she alleged facts that would permit a factfinder to conclude that manipulated DRG codes were actually submitted for payment (e.g., allegations of the amounts billed and paid, the claim numbers, or the process for submitting false claims).

The cases Ms. Lovato cites in her Objection underscore the insufficiency of her allegations. For example, in *U.S. ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 8 (D.D.C. 2003), the court denied a motion to dismiss where the relator provided "evidence in 12 patient files [that indicated] a discrepancy between the reported treatment and the actual treatment administered by the defendants." In *U.S. ex rel. Brunson v. Narrows Health & Wellness, LLC*, 469 F. Supp. 2d 1048, 1052 (N.D. Ala. 2006), the relators "supported their legal theory with facts describing [the defendant's] billing process, the specific codes that were allegedly altered or 'up-coded,' the frequency with which the allegedly fraudulent claims were submitted, and the time frame in which the allegedly fraudulent activity occurred." In *United States v. Crumb*, No. CV 15-0655-WS-N, 2016 WL 4480690, at *20 (S.D. Ala. Aug. 24, 2016), the United States "provide[d] extensive, particularized, raw data" in the form of "nearly 300 pages of Medicare and Alabama Medicaid claims printouts, identifying patient names, providers, dates of service, diagnoses, CPT codes, modifiers, amounts billed and paid, claim numbers, and more[.]" Similarly, in *United States v. Dental Dreams, LLC*, No. CV 13-1141 JH/KBM, 2016 WL 9777254, at *7 (D.N.M. Sept. 26, 2016), the relator identified, through personal knowledge, 40 patient files that resulted in false claims and named the doctors involved in making false statements.

Ms. Lovato objects to Judge Wang's analysis of her exhibits with respect to this claim, contending that Judge Wang improperly rejected her well-pleaded allegations and determined that the exhibits controlled. It is well established that "[w]hen a complaint includes an attached exhibit '[the exhibit's] legal effect is to be determined by its terms rather than by the allegations of the pleader.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (quoting *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967)); *see also Jacobsen*, 287 F.3d at 941 ("[I]n deciding a 12(b)(6) motion, the legal effect of the [attached documents] are determined by the [documents] themselves rather than by allegations in the complaint.") (citing *Droppleman*)).

The Court agrees with Kindred that Judge Wang properly considered each exhibit and found that either the exhibits failed to support or directly contradicted Ms. Lovato's allegations. Judge Wang meticulously considered the exhibits Ms. Lovato incorporated by reference in her complaint as follows:

> Nor is it apparent from the documents relied on by Ms. Lovato, *see* [#70-10; #70-11], that Kindred and/or Dr. Yaeger manipulated these DRGs for the purposes of fraudulently inflating the amount of reimbursement received from the Government, as opposed to reflect additional services actually provided. For instance, though Exhibit 10 shows that there is a change between the patient's DRGs, *see* [#70-10], it also reflects that the patient was put on a ventilator at a later date. [*Id.*]. Ms. Lovato does not allege that the placement of the patient on the ventilator on November 11, 2014 was false. [#74 at ¶ 94]. Nor is it clear that Exhibit 10 reflects any manipulation of the DRG from finding an additional complication or comorbidity, or any other reason. [#70-10]. The same is true of Kindred's incentive plan—it is unclear that it encourages the manipulation of DRGs or other fraudulent conduct to increase reimbursements to Kindred. *See* [#70-12].
> . . .
> Ms. Lovato's reference to Exhibit 9, an electronic-mail message from Hines to White, does not—at least on its face—show that the DRG of a patient was manipulated in order to maximize the rate of reimbursement, as Relator asserts in her First Amended Complaint. [#74 at ¶ 93 (citing #70-10];

> *Broker's Choice, of Am., Inc.,*. 861 F.3d at 1105 ("[w]hen a complaint includes an attached exhibit "[the exhibit's] legal effect is to be determined by its terms rather than by the allegations of the pleader."). Nor is there a further factual allegation that the requested action, i.e., "change of language," was made in this instance, or that Dr. Y[ae]ger had any involvement with the submission of the alleged change if it was made.

(Doc. # 134 at 23–24.)

Having reviewed the FAC and Ms. Lovato's exhibits, the Court concurs with Judge Wang's analysis and conclusions regarding the effect of those exhibits. Ms. Lovato's allegations alone are insufficient to state a DRG-manipulation FCA claim with particularity. For the reasons articulated by Judge Wang, the exhibits Ms. Lovato incorporated by reference do not tip her otherwise deficient allegations into the realm of plausibility. *Compare* (Doc. # 74 at ¶ 103 (alleging that "[i]n order to encourage its agents/employees to participate in these fraudulent practices, Defendant Kindred implemented a 'Short Term Incentive Compensation' ("STIC") bonus, which was almost entirely based on financial indicators, including, but not limited to, the reimbursement rate each individual was able to obtain from patients or prospective patients") (citing Doc. # 70-12 (2014-3-21 Letter and Chart regarding STIC Plan)) *with* (Doc. # 70-12 (providing no factual support for the allegation that the STIC bonus was based on patient reimbursement rates, and vaguely stating that "[m]etrics for the [STIC] plan are tied to key performance objectives listed on the balance scorecard . . . .")).

The Court agrees with Judge Wang that Ms. Lovato has failed to allege with the requisite particularity that Kindred and/or Dr. Yaeger submitted factually false claims based on manipulated DRGs. Ms. Lovato's objections to the contrary are overruled.

17

ii.        *Fraudulent discharge*

Ms. Lovato also argues that Judge Wang erred in holding that she had not

adequately alleged Dr. Yaeger's and Kindred's fraudulent discharging of patients. With

respect to this claim, Ms. Lovato alleged as follows:

> 97. Defendant Kindred and Defendant Yaeger also attempted to maximize
> profits by discharging Medicare and Medicaid patients based on the date
> that the Government would no longer reimburse them for caring for the
> patient, despite the fact that many of these discharges were not clinically
> appropriate and ended up placing many patients in imminent danger.
>
> 98. For example, Defendants Kindred and Yaeger discharged a patient
> because her stay was approaching the day that Medicare/Medicaid would
> no longer reimburse them, even though she was septic and clearly should
> not have been discharged. The impropriety of the discharge (which was
> done solely to maximize profits), is evidenced by the fact that within twenty-
> four hours of her discharge, the patient had to be admitted to another
> hospital. This example is illustrative of Defendant Kindred's and Defendant
> Yaeger's pattern and practice of discharging patients based on the end of
> their ability to seek reimbursement from the Government, and not clinical
> appropriateness.

(Doc. # 74 at 22.) Ms. Lovato reasserts in her Objection that her allegations are

sufficient to detail the "who," "what," "when," "where," and "how" of Defendants' fraud.

This Court disagrees.

In her Objection, Ms. Lovato cites to *United States ex rel. Conroy v. Select Med.*

*Corp.*, 211 F. Supp. 3d 1132 (S.D. Ind. 2016), for the proposition that her allegations

meet the Rule 9(b) standard. However, in *Conroy*, the relator put the defendants on

clear notice of the claim by providing, *inter alia*, the dates of the Medicare-beneficiary

patient's admission to and discharge from a particular medical facility. *See id.* at 1154

("Relators describe 'Patient B' as a Medicare beneficiary admitted to Select-Evansville

on September 16, 2011 and discharged on October 19, 2011, after exceeding her five-

sixths date."). Therefore, the allegations in *Conroy* afforded the "defendant[s] fair notice of [the] plaintiff[s'] claims and the factual grounds supporting those claims." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016). By contrast, Ms. Lovato's vague allegations in this case include reference to one patient with little to no identifying information. Further, Ms. Lovato's allegation that Dr. Yaeger and Kindred had a "pattern and practice of discharging patients based on the end of their ability to seek reimbursement from the Government, and not clinical appropriateness" is conclusory. The Court finds that Ms. Lovato's vague and conclusory allegations are insufficient to state a claim based on fraudulent discharge of patients. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). Thus, Ms. Lovato's objection is overruled.

iii.     *Diversion to hospitals that reimbursed at higher rates*

In her FAC, Ms. Lovato alleges that Defendants Kindred and Yaeger directed prospective Medicaid patients from Kindred Denver to Kindred Aurora, where the rate of reimbursement for Medicaid patients is significantly higher. Ms. Lovato alleges that

> 152. Defendant Kindred and Defendant Yaeger made these patient care decisions without regard to the level of care needed by the patient. *See* **Exhibit 18**, *Pending Worksheet* (showing that Medicaid patients would be directed to Denver facility prior to even assessing them). Thus, even if the severity of a patient's condition required treatment in an ICU (available only at Kindred's Denver location), Defendants treated the patient in its Aurora location—which has only a MOU—in order to allow for Defendant Kindred to bill the Government at a significantly higher rate. Plaintiff/Relator Lovato specifically witnessed that this decision throughout her employment at Defendant Kindred and, upon information and belief, this practice had been happening prior to her employment at Defendant Kindred and after she was terminated.

(Doc. # 74 at 34.) Judge Wang concluded in her Recommendation that Ms. Lovato failed to establish fraud with the requisite particularity and noted that she could not

discern from Exhibit 18 whether either Kindred or Dr. Yaeger "in fact sent patients to the Aurora LTACH when the patients needed care provided only at the Denver LTACH." (Doc. # 134 at 31.)

In her Objection, Ms. Lovato asserts that Exhibit 18 "demonstrat[es] that Medicaid patients who were in need of ICU treatment (namely patients who were on ventilators, in sepsis, and unstable) were sent to the Aurora facility prior to even assessing them" and she attempts to explain how to read Exhibit 18 for the first time in a footnote. (Doc. # 137 at 10 n. 3.) In so arguing, Ms. Lovato departs from her characterization of Exhibit 18 in the FAC—i.e., that Exhibit 18 "show[s] that Medicaid patients would be directed to Denver facility prior to even assessing them." *See* (Doc. # 74 at ¶ 152). It is well established that Ms. Lovato may not amend her complaint by adding factual allegations in response to Defendants' Motions to Dismiss or through objections to the Recommendation. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *Wilson v. Jenks*, Case No. 12–CV– 02495–RM–KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014) (same). The Court may overrule Plaintiff's objection on this basis alone.

However, even if the Court were to consider Ms. Lovato's new argument, Exhibit 18 does not establish that patients who were on ventilators, in sepsis, and unstable required ICU treatment; nor did Ms. Lovato specifically plead that in the FAC. Upon review of the FAC and Exhibit 18, the Court agrees with Judge Wang's conclusions that "Ms. Lovato's vague and conclusory allegations, without factual support, fail to establish

fraud with the requisite particularity" and that Exhibit 18 does not indicate that Kindred or Dr. Yaeger "in fact sent patients to the Aurora LTACH when the patients needed care provided only at the Denver LTACH." (Doc. # 134 at 31.) Ms. Lovato's objections are overruled.

iv.       *Fraudulent billing for patient admissions that did not meet the statutory requirements*

In the FAC, Ms. Lovato alleges that Defendants Kindred and Yaeger have delegated the admission of patients to Dr. Yaeger's wife, Robin Yaeger, even though she is not a licensed practitioner and does not possess admitting privileges as required by Colorado law. (Doc. # 74 at ¶¶ 143–144.) Ms. Lovato further alleges that Ms. Yaeger admitted Medicare/Medicaid patients to the LTACHs without involvement of a licensed practitioner or physician with admitting privileges on at least the dates of March 27, 2015; March 30, 2015; and March 31, 2015. (*Id.* at ¶ 145.) Ms. Lovato asserts that Defendants sought reimbursement from the Government for such admissions, thereby submitting legally false claims based on their express or implied certification that admissions to the LTACHs complied with the conditions of reimbursement.

Judge Wang concluded that Ms. Lovato failed to allege that Ms. Yaeger admitted Medicare/Medicaid patients or that Kindred and Dr. Yaeger sought reimbursement for such admissions. Ms. Lovato objects to Judge Wang's Recommendation on the bases that Judge Wang failed to draw all inferences in her favor, erroneously concluded that Ms. Lovato had not alleged the "who," "what," "when," "where," and "how" of Defendants' fraud, and improperly required the exhibit incorporated by reference into the FAC to be a smoking gun. The Court disagrees.

21

Upon review of Ms. Lovato's allegations concerning Ms. Yaeger's admissions, the Court finds that Ms. Lovato has failed to plead this claim with particularity. Ms. Lovato alleges only that Defendant Yaeger and Defendant Kindred submitted claims to Medicare and Medicaid for patient admissions that occurred on, *inter alia*, March 27, 30, and 31 of 2015, despite the fact that such admissions did not comply with state and federal regulatory requirements. With respect to Defendants' alleged false certifications, Ms. Lovato's factual allegations are insufficient.

A survey of Tenth Circuit FCA case law makes clear that Ms. Lovato's allegations are vague and conclusory. For example, in *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1169 (10th Cir. 2010), the Tenth Circuit concluded that the plaintiffs had satisfied the Rule 9(b) pleading burden where they "provided the dates, numbers, and amounts of [the defendant's] requests for payment under its contracts with the government" and "further alleged that each request for payment submitted during the pertinent time period was paid in full by the government." Specifically, the plaintiffs had alleged, in relevant part, the names of the employees responsible for submitting false claims to the Government, the payment requests submitted, the dates of submission, and the amounts sought. *Id.* at 1172; s*ee also United States ex rel. Clark v. UnitedHealth Grp., Inc.*, No. CV 13-00372 MV/CG, 2016 WL 9777207, at *6 (D.N.M. Sept. 22, 2016) (rejecting relator's contention that Rule 9(b) does not require allegations of specific false claims and concluding that "[w]ithout alleging any dates of specific false claims made by any Defendants, Relator fails to plead with particularity that Defendants submitted false claims with knowledge or reckless disregard for their falsity"). In this

case, Ms. Lovato alleges three dates on which Ms. Yaeger allegedly made admissions decisions, but she only conclusorily alleges that Defendants Yaeger and Kindred submitted false claims with respect to those admitted patients. Without further factual support, Ms. Lovato has not alleged specific false claims, and her FCA claims must fail.

Moreover, the Court disagrees with Ms. Lovato's contention that Judge Wang "required the exhibit [Exhibit 17] to be a smoking gun" and "failed to take Lovato's allegations as true and draw all inferences in [her] favor[.]" (Doc. # 137 at 13.) First, with respect to Exhibit 17, Ms. Lovato incorporated said exhibit by reference into the FAC to provide support for her allegation that "Defendants Kindred and Yaeger have delegated the admission of patients to Defendant Yaeger's wife, Robin Yaeger, even though she is not a licensed practitioner and does not possess admitting privileges as required by Colorado law." (Doc. # 74 at 32.) However, in reality, Exhibit 17 includes a statement by Ms. Yaeger that "all admits will . . . be run through me and I will assign a physician to the admission." (Doc. # 70-18 at 1.) Therefore, although Judge Wang explicitly assumed that Ms. Lovato's allegations were true, despite Exhibit 17's indication to the contrary,[2] Judge Wang permissibly could conclude that the exhibit controls because of the conflict between Ms. Lovato's allegations and the contents of the exhibit. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (explaining that "although we accept all well-pleaded allegations as true and draw all reasonable

---

[2] Judge Wang stated as follows: "Even assuming Ms. Yaeger was solely responsible for inpatient admissions to the LTACHs, a point that is not clear from the document Ms. Lovato relies on, . . . Ms. Lovato provides only one instance where Kindred admitted a Medicaid patient based on Ms. Yaeger's admission decision." (Doc. # 134 at 32.)

inferences in favor of the plaintiff, if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls.") (citing *Jackson v. Alexander,* 465 F.2d 1389, 1390 (10th Cir. 1972)). Therefore, Ms. Lovato's objections to Judge Wang's treatment of Exhibit 17 and Ms. Lovato's allegations are overruled.

2. <u>Wrongful Discharge in Violation of Public Policy Claim</u>

In the FAC, Ms. Lovato brings claims against Kindred for retaliatory discharge pursuant to the FCA (Claim 4) and the CMFCA (Claim 8)[3] and a state-law claim for wrongful discharge in violation of public policy ("WDPP") (Claim 9). In her Recommendation, Judge Wang concluded that Ms. Lovato's WDPP claim should be dismissed with prejudice because it is predicated on the same facts underlying her federal retaliatory discharge claim. Ms. Lovato objects to Judge Wang's conclusions on the bases that her WDPP claim is not duplicative of her FCA retaliation claim because it is based on facts that are broader than the FCA retaliation claim, including that her WDPP claim is based on concerns of patient safety that were distinct from her concerns about the submission of false claims. Ms. Lovato's arguments are unpersuasive.

---

[3] The FCA includes a "whistleblower provision to protect employees from retaliation," which extends to current employees at the time of the retaliatory conduct. *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613-14 (10th Cir. 2018) (discussing 31 U.S.C. § 3730(h)). This provision protects against retaliation "because of" a whistleblower's protected activity, i.e., steps "in furtherance of" either a *qui tam* suit or "other efforts to stop 1 or more violations" of the FCA of which the employer was aware. *Armstrong v. The Arcanum Grp., Inc.*, 897 F.3d 1283, 1286 (10th Cir. 2018) (quoting 31 U.S.C. § 3730(h)(1)). The CMFCA contains a whistleblower protection provision that mirrors the FCA for any employees retaliated against "because of lawful acts done by the employee . . . in furtherance of an action under this section or in furtherance of an effort to stop any violations of section 25.5-4-305." *Id.* § 25.5-4-306(7)(a).

First, the Court notes that Ms. Lovato raised the argument that her patient safety concerns are distinct from her submission of false claims for the first time in her Objection. Therefore, Ms. Lovato waived this argument. *See, e.g.*, *Parks v. Persels & Assocs., LLC*, 509 B.R. 345, 357 (D. Kan. 2014) ("Generally, courts do not consider new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge.") (citing *Grant v. Bradt,* 2012 WL 3764548, at *4 (S.D.N.Y. 2012)).

Turning to the arguments before Judge Wang, the Court agrees with Kindred's assertion that Ms. Lovato has not cited any authority that establishes that she may maintain a WDPP claim predicated on the same facts underlying her FCA retaliation claim. Ms. Lovato cites to *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519 (Colo. 1996), and *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 110 (Colo. 1992), in support of her objections. However, neither the plaintiff in *Lorenz* nor the plaintiff in *Mariani* brought a federal statutory claim for wrongful discharge in addition to their state-law WDPP claim. Further, the Colorado Court of Appeals has held that no public policy exception to the at-will employment doctrine exists where a statutory wrongful discharge remedy applies. *See, e.g.*, *Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo. App. 1984) (acknowledged by Colorado Supreme Court in *Lorenz,* 823 P.2d at 107 n. 5); *see also Gamble v. Levitz,* 759 P.2d 761, 765 (Colo. App. 1988) (holding summary judgment was proper on WDPP claim because no public policy exception was available where there was a statutory wrongful discharge remedy) (citing *Corbin*).

This Colorado case law is consistent with the cases out of this District and the Tenth Circuit, issued after *Lorenz* and *Mariani*, that have held a WDPP claim is unavailable where the plaintiff has brought a federal statutory claim for wrongful discharge. *See Stout v. Gyrodata, Inc.*, 560 F. App'x 765, 766–67 (10th Cir. 2014) (affirming dismissal of WDPP claim predicated on the filing of an Occupational Safety and Health Administration complaint because the statute provided a wrongful termination remedy); *Ybarra v. Comprehensive Software Sys., LLC*, No. 18-CV-01679-NYW, 2019 WL 266310, at *8 (D. Colo. Jan. 18, 2019) (dismissing WDPP claim predicated on same facts underlying Title VII claim) (collecting cases); *Hein v. AT&T Operations, Inc.*, No. 09-CV-00291-WYD-CBS, 2010 WL 5313526, at *6 (D. Colo. Dec. 17, 2010) (dismissing WDPP claim predicated on retaliation in violation of the Sarbanes–Oxley Act of 2002 because the statute provided a wrongful termination remedy); *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003) ("Caspar's pursuit of the wrongful discharge claim in addition to her Title VII claim is contrary to established limitations on the nature and reach of the state law claim. . . .The Colorado courts have expressly disallowed its application where a statute provides a wrongful discharge remedy. . . .Given the availability of Caspar's Title VII remedies, therefore, Colorado authority indicates the wrongful discharge claim is not available."). Judge Wang properly relied on these cases in recommending that Ms. Lovato's WDPP claim should be dismissed with prejudice.

IV.    **CONCLUSION**

For the foregoing reasons, it is ORDERED as follows:

- The December 14, 2020 Recommendation of United States Magistrate Judge (Doc. # 134) is AFFIRMED AND ADOPTED as an Order of this Court;

- Malley's Motion to Dismiss (Doc. # 96) is GRANTED;

- Western's Motion to Dismiss (Doc. # 125) is GRANTED;

- Plaintiff/Relator Lovato's claims against Defendants Western and Malley are hereby DISMISSED WITHOUT PREJUDICE, and Defendants Western and Malley are DISMISSED from this action;

- Kindred's Motion to Dismiss (Doc. # 95) and Dr. Yaeger's Motion to Dismiss (Doc. # 98) are GRANTED IN PART AND DENIED IN PART as follows:

  o Ms. Lovato's WDPP claim against Defendant Kindred (Claim 9) is DISMISSED WITH PREJUDICE;[4]

  o Ms. Lovato's FCA/CMFCA claims against Kindred and Dr. Yaeger for fraudulent billing remain;

  o Ms. Lovato's retaliatory discharge claims under the FCA and CMFCA (Claims 4 and 8) remain;

---

[4] Whether Ms. Lovato may bring a WDPP claim against Kindred is a question of law. Accordingly, the deficiencies in Ms. Lovato's WDPP claim cannot be cured by further amendment of her complaint, and dismissal with prejudice is warranted. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (explaining "amendment is futile if the complaint, as amended, would be subject to dismissal.").

- Ms. Lovato is allowed 30 days to amend the FAC to correct the pleading deficiencies identified in this Order with respect to the following claims against Defendants Kindred and Yaeger: Ms. Lovato's reverse false claims (Claims 3 and 7) and FCA/CMFCA claims for violations of the Anti-Kickback Statute, the Stark Law, manipulation of DRGs, fraudulent discharging of patients, diversion of patients to hospitals that reimbursed at higher rates, and patient admissions that did not meet the statutory requirements (Claims 1, 2, 5, and 6);

- **If Ms. Lovato fails to amend her complaint on or before April 21, 2021, said claims will be dismissed.**[5]

DATED:  March 22, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[5] With the exception of the WDPP claim, Ms. Lovato's claims are subject to dismissal for pleading deficiencies. The Court cannot at this time conclude that further amendment of the complaint would be futile. Therefore, the Court provides Ms. Lovato the opportunity to amend her complaint with respect to her claims against Defendants Kindred and Yaeger. The Court does not provide Ms. Lovato the opportunity to amend her FAC with respect to Defendants Western and Malley because Ms. Lovato did not object to Judge Wang's recommendation to dismiss both Western and Malley from this action.